UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DOREENE S.,                                    :
            Plaintiff,                         :
                                               :
        v.                                     :        C.A. No. 21-318WES
                                               :
KILOLO KIJAKAZI,                               :
Acting Commissioner of Social Security,        :
            Defendant.                         :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On December 10, 2018, Plaintiff Doreene S., a "younger" individual with a high school diploma and CNA training, but virtually no work history, applied for the second time for disability benefits based on her claim of various impairments, both mental (post-traumatic stress disorder ("PTSD") and dependent personality disorder) and physical (chronic obstructive pulmonary disease ("COPD"), hepatitis C ("Hep C") and fibromyalgia). Plaintiff alleged that she became disabled on May 1, 2015; her prior application alleged the same onset date and was denied by a different administrative law judge ("ALJ") on October 19, 2017. Tr. 97. Because Plaintiff's current application is only for Supplemental Security Income ("SSI"), the start of the relevant period is her date of application, December 10, 2018.

Before the Court is Plaintiff's motion for reversal of the decision of the Acting Commissioner of Social Security ("Commissioner") denying her SSI application. Plaintiff contends that the ALJ erred (1) regarding her physical impairments, in finding that, other than COPD, none of Plaintiff's physical impairments were severe at Step Two, in failing to mention the diagnosis of cryoglobulinemia[1] and in failing properly to analyze her claim of chronic pain in

---

[1] Cryoglobulins are abnormal plasma (blood) proteins. See Cryoglobulins, Stedmans Medical Dictionary, (updated Nov. 2014) (available via Westlaw). Cryoglobulins appear in the presence, inter alia, of Hep C, and generally, but

determining her RFC[2]; and (2) regarding her mental impairments, in finding that Plaintiff's subjective description of the severity of her mental health limitations is not consistent with the evidence, resulting in an RFC that, although severely limited, does not preclude all work. Defendant Kilolo Kijakazi ("Defendant") has filed a counter motion for an order affirming the Commissioner's decision.  The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence and that Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30. The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment

---

not always, decline when Hep C is successfully treated.  See ECF No. 11 at 3-4; ECF No. 12 at 3 & nn. 2-3. Cryoglobulins may be asymptomatic; however, as levels rise, cryoglobulins may respond to cold by causing inflammation, joint pain, fatigue and rash, resulting in cryoglobulinemia.  Id.; see Cryoglobulinemia: Symptoms, Causes, Tests and Treatments (clevelandclinic.org) (viewed July 21, 2022).

[2] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 416.945(a)(1).

for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877

F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the

Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399

(1971)).

## II.  **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 416.905.  The impairment must be severe,

making the claimant unable to do previous work, or any other substantial gainful activity which

exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

### A.  **The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §

416.920.  First, if a claimant is working at a substantial gainful activity, the claimant is not

disabled.  20 C.F.R. § 416.920(b).  Second, if a claimant does not have any impairment or

combination of impairments that significantly limit physical or mental ability to do basic work

activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. §

416.920(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 416.920(d).  Fourth, if a claimant's

impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. §

416.920(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past

work) prevent doing other work that exists in the local or national economy, a finding of disabled

is warranted.  20 C.F.R. § 416.920(g).  Significantly, the claimant bears the burden of proof at

Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to SSI claims).

### B.  Pain

The ALJ must consider a claimant's statements about pain and determine the extent to which they are reasonably consistent with the objective medical evidence.  SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017); 20 C.F.R. § 416.929(c)(3).  In this Circuit, this requirement is reflected in Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28-29 (1st Cir. 1986), which requires examination of considerations capable of substantiating subjective complaints of pain including: (1) daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or other symptoms; (5) treatment, other than medication, received for relief of pain; (6) any other measures used to relieve pain or other symptoms; and (7) any other factors relating to the claimant's functional limitations and restrictions attributable to pain.  Cookson v. Colvin, 111 F. Supp. 3d 142, 154 (D.R.I. 2015).  Although an individual's statements as to pain are not conclusive of disability, 42 U.S.C. § 423(d)(5)(A), remand is required if the ALJ fails to perform this analysis as long as the claimant has sustained her burden of presenting a competent treating source opinion endorsing both the diagnosis of an impairment that causes subjective pain, as well as function-limiting pain.  Tegan S. v. Saul, 546 F. Supp. 3d 162, 171 (D.R.I. 2021).

### C.  Claimant's Subjective Statements

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d

192, 195 (1st Cir. 1987).  Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 5180304, at *3.  It directs the ALJ to consider the entire case record, including the objective medical evidence, the individual's statements, statements and other information provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective statements are consistent with the medical signs and laboratory findings. Id. at *4.

### III.   Background and Analysis

#### A.    Plaintiff's Physical Impairments

##### 1.    Factual Background

While pain was not the principal focus either of Plaintiff's application[3] or of the ALJ's decision, Plaintiff now challenges the ALJ's approach to her alleged physical limitations based on her subjective complaints of pain, which she alleges is a symptom of a diagnosed impairment, cryoglobulinemia.

Plaintiff's subjective statements about pain in the context of her SSI application may be briefly summarized.  First, during the ALJ's hearing, Plaintiff testified that she believes she cannot work due to "my anxiety [and] depression," and explained that she was taking no medication, including no medication for pain or for any other physical symptom.  Tr. 67-69. During questioning by the ALJ, she never mentioned pain.  On examination by her own attorney, she testified that she can no longer garden as she used to because of her mental impairments, but added "also the pain," as well as that her mental impairments cause nail biting and thumb

---

[3] On application, for physical impairments, Plaintiff listed COPD (which the ALJ found to be a seriously limiting severe impairment), Hep C (which was cured by the time Plaintiff applied), and fibromyalgia (which is mentioned once, but was never diagnosed and is not in issue on appeal).  Tr. 118.

sucking, which makes her fingers and mouth sore.  Tr. 74-76.  She stated that it is hard to get out of bed because her hands hurt and it is hard to shower because the water and movements of showering cause pain.  Tr. 75.  In passing, she noted that "I'm a lefty and that's the arm that gives me the most pain."  Tr. 76.  Second, in her function report, Plaintiff alleged that she drives and shops, but that pain prevents her from lifting more than ten pounds, while shortness of breath/COPD limits her ability to walk or climb stairs.  Tr. 276.  She noted that personal care is "sometimes painful," although she consistently presented as "appropriately dressed," "neatly dressed" and/or "well groomed" at her many mental health appointments of record.  Tr. 272; e.g., Tr. 453, 747, 915.

Further background regarding Plaintiff's pain allegations may be derived from the prior ALJ's decision in connection with her first SSI application.  Tr. 97-112.  As of that time, Plaintiff was diagnosed with non-severe COPD and active severe Hep C, with related cryoglobulinemia.  Tr. 99-100.  During that prior period, Plaintiff was declining treatment for Hep C, despite medical advice from her treating infectious disease specialist that this refusal of treatment was "medically unwise since she has tested positive for cryoglobulins and has joint pains and rash associated with this."  Tr. 106 (internal citation and quotation marks omitted).  The prior application was denied based on the finding that Plaintiff could perform light work; despite the diagnosis of active cryoglobulinemia related to Hep C that was causing joint pain.  Tr. 104, 106.  Pain was not mentioned as a function-limiting symptom.  Plaintiff did not challenge these findings in court.

After her prior application was denied, Plaintiff changed course and accepted Hep C treatment; this was successfully completed on September 27, 2018.  Tr. 390-91.  At follow up appointments with Plaintiff's hematologist at Landmark at the end of 2018, Plaintiff's

cryoglobulin levels were down.  In November and again in December 2018, the hematologist

recorded the finding that Plaintiff's physical examination was normal, with no symptoms of cold

sensitivity or other symptoms related to increased cryoglobulin levels.  Tr. 367-69; see Tr. 368

("She is completely asymptomatic and . . . I don't expect any symptoms.").  Also at the end of

2018, a neurologist examined Plaintiff in light of her complaint of "full body pain, mostly

affecting the left arm."  Tr. 332.  The neurological examination was "unrevealing."  Tr. 334.

Focusing on Plaintiff's complaint of arm pain, the neurologist noted that she had no symptoms of

carpal tunnel syndrome and ruled out epicondylitis, despite Plaintiff's claim that she had

previously been diagnosed with both; he assessed myalgia and suggested Ibuprofen to manage

symptoms.  Tr. 333-34.

In January 2019 (having applied again for disability benefits in December 2018), Plaintiff

initiated treatment with Dr. Timothy Cavanaugh as her primary care provider for both mental

and physical symptoms.  Tr. 374.  For the balance of the period in issue, except for an

appointment with a pulmonologist to monitor COPD and infrequent follow up with the

specialists regarding Hep C, Dr. Cavanaugh or nurses in his practice were the only providers

Plaintiff saw for treatment of her relevant physical symptoms.[4]

At the initial appointment, Dr. Cavanaugh noted the prior diagnosis of Hep C, but also

that she was "recently told she may be cured," as well as the related prior diagnosis of

cryoglobulinemia; he assessed Plaintiff's complaint of "chronic pain," which she described as

"pins and needles," as possibly linked.  Tr. 374.  On physical examination,[5] Dr. Cavanaugh

---

[4] Plaintiff did have medical treatment for physical conditions not pertinent to this case.  For example, in 2019, she had a routine colonoscopy, Tr. 1041, while in 2020, she was hospitalized and treated for acute appendicitis.  Tr. 841-42, 1074-1307.  While the latter was extremely serious, it is a transient condition that is not relevant to what is in issue in this case.

[5] Plaintiff asks the Court to consider her subjective complaints as reflected in the "Review of Systems" portion of these medical records as if they reflect objective findings on examination.  As the Commissioner correctly points

found no joint inflammation, erythmia, warmth, swelling or impact on range of motion; in short, everything was normal except that Plaintiff was deconditioned and mildly depressed. Tr. 374-75. Dr. Cavanaugh noted that Plaintiff's pain complaints were "out of poportion [sic] to any exam findings," as well as that Plaintiff had taken Ibuprofen in the past and was currently taking nothing for pain. Tr. 374-75. He prescribed Meloxicam, a NSAID, and ordered no other treatment for pain. Tr. 375. At the regular monthly/bi-monthly appointments with Dr. Cavanaugh that followed, Plaintiff continued to complain of worsening and diffuse pain, especially in her left arm, shoulder and neck, with no effect from various prescribed medication trials (meloxicam and later gabapentin, and then pregabalin) and over-the-counter NSAIDS (Aleve). At the same time, Dr. Cavanaugh continued to make entirely normal findings on physical examination. Dr. Cavanaugh never prescribed stronger pain medication and never referred Plaintiff to a pain specialist. Instead, he repeatedly referred Plaintiff to see a rheumatologist. However, as far as the record shows, Plaintiff never followed up on this advice because she "was resistant"; that is, for the period in issue, she never saw a rheumatologist and did not keep any of the appointments with various rheumatologists that Dr. Cavanaugh arranged for her. E.g., Tr. 824, 830-32, 843, 1019.

At early appointments, Dr. Cavanaugh's notes indicate that he was unable clearly to link Plaintiff's complaints of pain to cryoglobulin levels caused by Hep C and he was looking to the specialists, particularly the hematologist, and "[a]waiting consultation with rheumatologist." E.g., Tr. 830, 844. However, by August 2019, Dr. Cavanaugh's treating notes had shifted from an assessment of cryoglobulinemia to one of chronic pain and his subsequent notes do not reflect

---

out, this is not accurate or appropriate. See Stivers v. Colvin, 3:15-cv-00270-BAS-NLS, 2016 WL 8731091, at *9 (S.D. Cal. Jan. 15, 2016), adopted, 2016 WL 889905 (S.D. Cal. Mar. 9, 2016) ("Review of Systems section of the notes . . . inventories the patient's subjective complaints and not the physician's findings").

cryoglobulinemia as the established diagnosis.  E.g., Tr. 1019 (pain "[o]riginally attributed to cryoglobulinemia") (emphasis added).  Further, Dr. Cavanaugh's treatment for the complaints of pain was limited to prescribing trials of medication that also could assist Plaintiff with her mental challenges.  Otherwise, his treatment was extremely limited.  For example, in September 2019, Dr. Cavanaugh assessed "chronic pain syndrome" but suggested meditation and short walks to address her "perception of pain"; with "no subjective improvement" in either pain or mood with Duloxetine, Dr. Cavanaugh switched to a starter dose of Lyrica, which Plaintiff soon stopped because of an allergic reaction and it was not effective.  Tr. 826, 1038.  Notably, when Plaintiff told Dr. Cavanaugh that she wanted to explore vocational training "so that she might find a new job," he did not discourage her.  Tr. 834.  Dr. Cavanaugh's many physical examinations reflect no clinical findings related to pain.  Dr. Cavanaugh did not ever opine that Plaintiff suffers from any functional limitations.  No other source has opined that Plaintiff is functionally limited by pain or other physical symptoms.

This comprises the record that was reviewed at the reconsideration phase by Dr. Donn Quinn, the social security expert physician.  Dr. Quinn's administrative findings reference Plaintiff's allegations of pain, but also the absence of evidence of active liver disease and carpal tunnel syndrome, the absence of evidence of diagnosis of or treatment for fibromyalgia or COPD, and that cryoglobulinemia was found by the specialists to be asymptomatic.  Tr. 126-27.  Based on his file review, Dr. Quinn found that none of Plaintiff's physical impairments were severe.  Tr. 127.

After Dr. Quinn signed his opinion on October 25, 2019, Plaintiff continued treating with Dr. Cavanaugh, seeing him five more times.  Tr. 1017-48.  The treating notes for these appointments are essentially the same as what Dr. Quinn reviewed in that Plaintiff continued to

complain of pain, especially in the arms and shoulders, while Dr. Cavanaugh continued to make entirely normal objective clinical observations on physical examination and continued to urge Plaintiff to see a rheumatologist, and she continued to be resistant.  By January 2020, Plaintiff told Dr. Cavanaugh she had "stopped all her meds."  Tr. 1029.  At the last appointment of record with Dr. Cavanaugh – in February 2020 – he noted Plaintiff's longstanding resistance to seeing a rheumatologist and her many failed trials with medications (like a starter dose of Lyrica) to treat mood and pain; he wrote, "I do nto [sic] have a good plan for her."  Tr. 1019, 1038.  For treatment, he suggested "alternative non traditional therapies could be beneficial to include aqua therapy and Acupuncture."  Tr 1019.  From then until the ALJ's hearing in August 2020, Plaintiff apparently had no treatment for pain; at the hearing, she confirmed that she was still taking no medication for pain.  Tr. 68.

The ALJ found Dr. Quinn's medical assessment to be "informed, supported and persuasive," as well as (with one exception) that the post-file review evidence would not warrant a change in Dr. Quinn's findings or their persuasiveness; the ALJ emphasized the lack of any conflicting evidence in that "no treating opinion . . . corroborate[d] the claimant's allegations or . . . contradict[ed] the findings of  [Dr. Quinn]."  Tr. 55.  The exception related to COPD.  Noting that post-file review records reflect an appointment with a pulmonologist, which confirmed the diagnosis of COPD in the setting of active cigarette smoking, Tr. 55, the ALJ found COPD to be severe at Step Two, Tr. 49, and, for the physical RFC, concluded that Plaintiff is severely limited in that she can do no more than sedentary work and must avoid pulmonary irritants.  Tr. 51.  Otherwise, the ALJ noted the legal principle that, when a claimant makes statements about pain that are not substantiated by objective medical evidence, an adjudicator must consider other evidence to determine if the symptoms limit the ability to do work, Tr. 54, as well as that "the

10

claimant was also seen for other conditions, which improved or resolved with treatment/medications or were not recurrent/chronic." Tr. 49.  However, he performed no analysis either of Plaintiff's subjective statements regarding pain or of Dr. Cavanaugh's early linkage of pain to cryoglobulinemia and subsequently to "chronic pain."

> 2.     *Arguments, Analysis and Recommendations*

Plaintiff makes three arguments of error regarding the ALJ's treatment of her physical impairments.

The Court may quickly dispose of Plaintiff's first argument.  She contends that, despite the opinion of the treating hematologist in late 2018 (months after Hep C was cured), that cryoglobulinemia was still present but was entirely asymptomatic, Tr. 367-69, the Court should nevertheless reinterpret Dr. Cavanaugh's notes of his early encounters with Plaintiff as presenting a diagnosis of symptomatic cryoglobulinemia, creating a conflict with Dr. Quinn's administrative finding (in reliance on the hematologist) that cryoglobulinemia was non-severe. Plaintiff asks the Court to remand for resolution of the conflict and an analysis of the functional limitations that she contends are necessarily caused by the diagnosis of cryoglobulinemia.

The premise for this argument is simply wrong.  Dr. Cavanaugh's notes consistently indicate that, as a general practitioner, he was relying on the specialist (the hematologist) with respect to the assessment of cryoglobulinemia.  After recording that cryoglobulinemia had been diagnosed, Dr. Cavanaugh's initial notes reflect his belief that there was a likelihood, despite the lack of a clear link, that Plaintiff's then-current complaints of pain related to her elevated cryoglobulin levels caused by Hep C, but that he was "[a]waiting consultation with rheumatologist" before considering whether "immune modulating medications might benefit her at this point." E.g., Tr. 830, 844.  By the end of the period in issue, Dr. Cavanaugh's notes are

plain that cryoglobulinemia had not been the cause of pain – to the contrary, he notes that Plaintiff's complained-of pain had been "[o]riginally attributed to cryoglobulinemia associated with Hep C.  But her Hep C has been treated, and her cryoglobulin levels have fallen."  Tr. 1019 (emphasis added).  In any event, "the mere diagnosis of a condition . . . says nothing about the severity of the condition."  Gardiner v. Colvin, Civil Action No. 14-482-S, 2015 WL 6504802, at *8 (D.R.I. Oct. 27, 2015) (internal citation and quotation marks omitted).  In short, there is no conflict between Dr. Cavanaugh's ultimate diagnostic opinion and Dr. Quinn's assessment of the diagnostic facts of record; therefore, there is no error in the ALJ's failure to name cryoglobulinemia as a potentially severe medically diagnosed impairment at Step Two.

Plaintiff's second argument is equally unavailing.  Based on her past medical history of having been told to wear wrist splints by an unspecified provider for osteopenia and of an electromyography showing borderline carpal tunnel syndrome and epicondylitis prior to the period in issue, she contends that the ALJ erred in failing to assign hand/arm limitations impacting her ability to work.  The problem is that the only arguably pertinent record for the period in issue bearing on these conditions is the October 2018 report of a neurologist whose neurologic examination was "unrevealing," including "no features of epicondylitis" and "no clinical findings supportive of CTS."  Tr. 333-34.  Thus, the ALJ committed no error in relying on Dr. Quinn's finding that carpal tunnel syndrome was non-severe and epicondylitis was not a medically determinable impairment during the period in issue.

Plaintiff's third argument has more heft – she challenges the ALJ's failure to name and analyze Plaintiff's subjective complaints of pain at Step Two and his failure to perform an Avery analysis of pain in formulating Plaintiff's RFC.  This argument rests on the reality that the ALJ seemingly ignored Dr. Cavanaugh's observations of Plaintiff's somewhat elevated rheumatoid

factors, assessments of "chronic pain," and treatment of pain with a series of medication trials, none of which were efficacious. What the Court can divine from the ALJ's skimpy treatment of Plaintiff's complaints of pain is that Dr. Quinn examined Dr. Cavanaugh's notes (as well as those of the neurologist, the hematologist and the infectious disease specialist), which reflect Plaintiff's complaints of pain, and concluded that they do not reflect a severe medically determinable impairment. Tr. 127. The ALJ relied on Dr. Quinn. Tr. 55.

The problem, as Plaintiff points out, is that the ALJ's decision barely mentions pain; indeed, Dr. Cavanaugh's diagnosis of and treatment for chronic pain are not mentioned at all. Instead, at Step Two, the ALJ batted aside as "non-severe" what he referred to in summary fashion as "other conditions," noting that those medically determinable impairments that are not severe would be considered in assessing Plaintiff's RFC, but not clarifying whether this would include Plaintiff's subjective claim of pain. Tr. 49. Then, for the RFC, the ALJ mentions Dr. Cavanaugh's mental health treatment, Tr. 53, but makes no mention of his assessment of chronic pain. Rather, the ALJ obliquely notes that claimant alleges/testified "that she has serious and chronic physical . . . disorders." Tr. 52. His decision recites that, "once an underlying physical . . . impairment(s) that could reasonably be expected to produce the claimant's pain . . . has been shown," coupled with "statements" of limiting pain not "substantiated by objective medical evidence," an ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." Tr. 54. However, the ALJ then failed to perform this analysis. I find that the ALJ's overly truncated treatment of Plaintiff's subjective claim of pain is error.

The question for the Court is whether this error is material, requiring remand for the ALJ to call a medical expert as Plaintiff contends. Newman v. Saul, 474 F. Supp. 3d 345, 356 (D.

Mass. 2020) (for hearing officer's failure to analyze impairment to be prejudicial, resolving error must be outcome determinative) (citing <u>Perez Torres v. Sec'y of Health & Human Servs.</u>, 890 F.2d 1251, 1255 (1st Cir. 1989)); <u>Van Ngo v. Saul</u>, 411 F. Supp. 3d 134, 145 (D. Mass. 2019) (while failure to consider medical opinion in record may constitute error, claimant must also show that this error prejudiced his case).  Remand is unnecessary if it will amount to no more than an empty exercise.  <u>Ward v. Comm'r of Soc. Sec.</u>, 211 F.3d 652, 656 (1st Cir. 2000).  Complicating the materiality analysis in this case is the ALJ's unchallenged RFC finding that Plaintiff nevertheless was subject to significant exertional limitations (limiting her to sedentary work), with significant limitations impacting attention and persistence, caused by COPD and her mental impairments.  That is, for the ALJ's error to be material in the circumstances of this case, there must be some evidence from which an adjudicator might conclude that, due to pain, she is even more limited than the ALJ's RFC based on COPD and her mental limitations.

Having carefully reviewed Plaintiff's arguments and scrutinized the entirety of the lengthy medical record, I find that Plaintiff has failed to sustain her burden of demonstrating that she was prejudiced by the ALJ's error in virtually ignoring her subjective claim of pain.  The most significant evidentiary gap, as the ALJ correctly noted, is that "[t]here is no treating opinion to corroborate the claimant's allegations or to contradict the findings of [Dr. Quinn]," nor is there any other evidence to support a more restrictive RFC than sedentary work with minimal attentional and persistence demands.  Tr. 55.  That is, no treating source, including Dr. Cavanaugh, ever opined to <u>any</u> functional limitations based on pain.  The record also utterly lacks evidence of significant treatment for pain; indeed, by the time of the ALJ's hearing, the record reflects that there had been no treatment at all for pain in more than six months.  Cinching the lack of materiality of the error is the reality that Plaintiff's specific subjective statements

about the limiting effects of pain confirm only that she <u>could</u> perform sedentary work. Specifically, in Plaintiff's function report, she alleged that pain limited her to reaching and lifting ten pounds or less, Tr. 276, yet the ALJ's RFC contains the substantially same limit (based on COPD): "claimant is limited to lifting and carrying 10 pounds maximum." Tr. 51. Similarly, during her testimony, Plaintiff claimed only that pain affected her ability to garden and bothered her while showering and on waking up, but she did not testify that it prevented her from completing the latter tasks. Despite it being her burden to do so, Plaintiff has not pointed to anything in the record (not even her own statements) establishing that pain limited her ability to perform even sedentary work involving simple tasks in two-hour blocks of time. <u>Jones v. Astrue</u>, C.A. No. 09-206S, 2010 WL 2326261, at *4 n.1 (D.R.I. Feb. 19, 2010), <u>adopted</u>, 2010 WL 2326263 (D.R.I. June 2, 2010) (with no objective evidence that contradicts ALJ's ultimate finding of light work, any error by ALJ would be harmless).

In such circumstances, the ALJ's <u>Avery</u> error is harmless. <u>Ruben M. v. Saul</u>, C.A. No. 19-119MSM, 2020 WL 39037, at *10 (D.R.I. Jan. 3, 2020), <u>adopted</u>, 2020 WL 555186 (D.R.I. Feb. 4, 2020) ("at Step Three/Four, the burden rests on the claimant and [the p]laintiff failed to provide any precise functional assessment, completed by a physician to support the claimant's subjective physical complaints") (internal citation and quotation marks omitted); <u>Belanger v. Barnhart</u>, No. 06-13-B-W, 2006 WL 3519307, at *2 (D. Me. Dec. 6, 2006) (when plaintiff does not identify testimony about symptoms that would necessarily be inconsistent with ALJ's RFC, failure to discuss plaintiff's subjective testimony about symptoms would be harmless). At bottom, "[t]he regulations place much weight on objective evidence and the ALJ may disregard subjective claims of pain if they are unsubstantiated and he does not credit them," as long as there is also no opinion establishing that the pain caused limitations. <u>Mills v. Apfel</u>, 244 F.3d 1,

7 (1st Cir. 2001).  Here, not only is there no such opinion, but there also are no subjective statements supportive of a more restrictive RFC.  Therefore, despite a flawed decision by the ALJ, I do not recommend remand.

### B.    Plaintiff's Mental Limitations

The principal focus of this case at the administrative level was on Plaintiff's mental impairments (depressive and anxiety disorders, a personality disorder and PTSD), all of which the ALJ found to be severe and significantly limiting.  Plaintiff challenges the ALJ's mental RFC finding that she nevertheless could perform simple tasks in two-hour blocks without consistently dealing with the public for two reasons: (1) the ALJ improperly discounted her subjective complaints concerning the intensity, persistence, and limiting effects of her mental impairments; and (2) the ALJ erred in accepting as "very persuasive" the testimony of the medical expert, Dr. Chukwuemeka Efobi.

Plaintiff's second argument can be easily dispatched.  The ALJ asked Dr. Efobi two questions.  First, he asked for the applicable diagnoses and Dr. Efobi testified (citing to the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (July 18, 2022)) that Plaintiff suffered from depressive, bipolar and related disorders (12.04); anxiety and obsessive-compulsive disorders (12.06); personality and impulse-control disorders (12.08); and trauma- and stressor-related disorders (12.15).  Tr. 78.  Next, the ALJ asked Dr. Efobi for his professional opinion of the severity of these impairments in each of the paragraph B functioning areas and Dr. Efobi opined that Plaintiff is mildly limited in her ability to perform simple tasks and relate socially, mildly to moderately limited in the ability to concentrate and persist and moderately limited in the ability to adapt.  Tr. 77-79.  Plaintiff was offered the opportunity to ask Dr. Efobi questions, but she declined.

Plaintiff's argument of error relies on "Medical Expert Handbook,"

https://www.ssa.gov/appeals/public_experts/Medical_Experts_(ME)_Handbook-508.pdf. (Aug.

2017) (the "Handbook"), which provides basic background information to individuals who are

going to serve as medical experts for the Commissioner's Office of Hearings Operations.  Id. at

2.  Plaintiff contends that the Handbook required Dr. Efobi to "be prepared to cite to specific

evidence to support your testimony."  Id. at 12.  She also cites to the section of the Handbook

that advises, "[y]ou must cite to specific evidence," although it does not instruct the expert to

volunteer this information if he is not asked.  Id. at 13.  In this case, whether Dr. Efobi in fact

was prepared in compliance with this aspect of the Handbook is unknown because Plaintiff's

attorney declined to ask any follow-up questions.  With no suggestion that the Handbook has the

force of law or that any court has ever found error requiring remand because a testifying medical

expert did not add record citations to each answer,[6] this argument is a complete non-starter.  I

recommend that it be ignored.

The remainder of Plaintiff's challenge to the ALJ's approach to Plaintiff's mental

impairments is focused on the ALJ's detailed and thoughtful treatment of her subjective

statements regarding her symptoms.  See Tr. 52-55.  The ALJ's first reason for discounting

Plaintiff's allegations is their inconsistency with the objective medical evidence, particularly

Plaintiff's lack of need for psychiatric hospitalization[7] and her many mental status examinations,

which were often entirely within normal limits.  Tr. 54 (referencing, e.g., Tr. 547, 573, 915).

This reason accurately reflects the record and is legally appropriate.  See Morey v. Colvin, C.A.

---

[6] The Court's independent search for any decision supportive of Plaintiff's argument turned up dry.

[7] This lack of need for more aggressive mental health intervention throughout the period in issue occurred despite Plaintiff's repeated decision to decline even conservative mental health treatment.  For example, one provider recorded the clinical observation that Plaintiff was psychiatrically stable despite having decided to eschew all psychiatric medication.  Tr. 969 ("CLT REPORTS SHE IS JUST ON VITAMINS . . . CLT PSYCH STABLE AT THE TIME OF APPT").

No. 14-433M, 2015 WL 9855873, at *14 (D.R.I. Oct. 5, 2015) ("there is . . . nothing improper in the ALJ's reliance on such 'unremarkable' [mental status examination] results") (internal citation omitted).  Second, the ALJ properly marshaled Plaintiff's daily activities as belying her subjective complaints, for example, her ability to maintain personal care and hygiene, to attend medical appointments and to interact appropriately with healthcare professionals, to live independently, to shop in stores, pay bills, count change, handle a savings account and to use a checkbook.  Tr. 49-51 (referencing, e.g., Tr. 271-78); e.g., Tr. 569 (current living situation "going well"; "attending all her medical appts independently").  Third, the ALJ accurately and appropriately considered Plaintiff's recurring failure/refusal to take medication to treat mental health symptoms as prescribed (punctuated by periods of compliance) and her frequent failure to show up for scheduled appointments or to sustain ongoing treatment.  Tr. 55 (referencing, e.g., Tr. 753, 756, 878); see Tr. 755 ("CLT HAS NOT BEEN ENGAGING IN TX"); Tr. 989 ("last seen by this worker 4 months ago").  Also supported is the ALJ's related finding that "it is reasonable to assume that her mood and functioning would likely improve" if she accepted treatment.  Tr. 36.  For example, in June 2018, a treating source noted that, regarding "medications, . . . she now says she's much more accepting of being consistent," Tr. 454, while, at the next appointment, the treating source noted "some improvement in mood."  Tr. 458.  Importantly, Plaintiff criticizes only some, but not all, of the ALJ's reasons; thus, she essentially concedes that there is substantial unchallenged evidence supporting the ALJ's ultimate finding. See Flood v. Colvin, No. 15-2030, 2016 WL 6500641, at *1 (1st Cir. 2016) (possible error in subjective symptom analysis harmless as long as substantial evidence still supports the ALJ's credibility finding).

None of Plaintiff's challenges to the ALJ's well-supported analysis can withstand scrutiny.

First, Plaintiff faults the ALJ for relying on treatment noncompliance, and particularly for "assuming" that compliance with her prescribed medication regimen and attending treatment appointments would have improved her mood and functioning.  Tr. 55.  This is not error – rather, the ALJ's overall approach is consistent with the applicable Social Security ruling, which instructs that consideration of a claimant's failure to access available treatment may well support the determination that the "alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."[8]  SSR 16-3p, 2017 WL 5180304, at *9. Further, the ALJ had substantial evidence to support his conclusion.  Tr. 459.  To illustrate with one example, the ALJ noted Plaintiff discontinued attendance at Alcoholics Anonymous meetings.  Tr. 53.  Plaintiff argues that she explained this noncompliance as due to her discomfort with the behavior of the chairperson of one meeting.  See Tr. 505.  However, the record also reflects that Plaintiff was amenable to resuming meetings elsewhere, Tr. 506, yet, over a year later, non-attendance continued.  Tr. 751.  The ALJ did not err in considering this as bearing on "treatment, other than medication" and the "extent of the treatment sought."  20

---

[8] This case is very different from the in-Circuit decisions on which Plaintiff relies for the proposition that remand is required when noncompliance with mental health treatment is relied on to discount subjective statements.  For example, in Auchey v. Berryhill, Civil Action No. 15-30174-MGM, 2017 WL 4399542 (D. Mass. Sept. 29, 2017), the ALJ had ignored evidence of extended psychiatric hospital stays punctuated by supportive residential living; in such circumstance, the court ordered that, on remand, there should be further consideration whether medication noncompliance was actually a symptom of this mental illness rather than evidence of misrepresentation of the level of disability.  Id. at *4.  Similarly, in Martinage v. Berryhill, Case No. 16-cv-245-PB, 2017 WL 1968291 (D.N.H. Apr. 20, 2017), adopted, 2017 WL 1968273 (D.N.H. May 11, 2017), the court rejected as unsupported the ALJ's conclusion that there is no documented medical reason for noncompliance with diabetes medication in light of the specific finding of a treating source, to whom the ALJ had afforded great weight, that such noncompliance was diagnostically material to the suicidality caused by the claimant's mental impairments.  Id. at *10-12.  Here, by contrast, the evidence establishes that Plaintiff's mental health symptoms were at most moderate and that, while treatment did result in some improvement, the periodic cessation of treatment did not result in significant adverse consequences.  Thus, unlike Auchey and Martinage, the evidence here is supportive of the ALJ's finding that Plaintiff did not aggressively pursue treatment because her symptoms were not as intense, persistent or limiting as she claimed.

C.F.R. § 416.929(c)(3)(v); SSR 16-3p, 2017 WL 5180304, at *9; see McNelley v. Colvin, No. 15-1871, 2016 WL 2941714, at *2 (1st Cir. Apr. 28, 2016) (claimant's refusal to continue psychotherapy supported ALJ's decision to discount his subjective complaints).

Second, Plaintiff argues that the ALJ erred in observing that, during the period in issue, Plaintiff never needed psychiatric hospitalization because "hospitalization is not a requirement for considering Plaintiff's mental symptoms." ECF No. 11 at 10. This argument makes no sense: while Plaintiff is absolutely correct that it would be error for an ALJ to refuse to consider mental health symptoms except for those suffered by persons who have been psychiatrically hospitalized, that has no bearing on the proposition in issue here – that the ALJ was free to and properly considered that there was "no evidence in the longitudinal record of severe emotional difficulties," supported, inter alia, by the undisputed fact that Plaintiff did not require psychiatric hospitalization during the relevant period. Tr. 54.

Finally, Plaintiff argues that the ALJ's reference to Plaintiff's comment to her therapist that "if she had money that she would drink" amounts to an attack on Plaintiff's character and is not an appropriate consideration in assessing the credibility of her subjective statements. Tr. 52 (referencing Tr. 451). The problem with Plaintiff's argument is that it overlooks the balance of what the ALJ wrote, which reveals that this comment was embedded in her statement to her treating psychiatrist that she was declining all medication and was not sure if she would return for any mental health treatment. Tr. 52. This reference is further supportive of the ALJ's finding that Plaintiff improved with treatment in that, as the ALJ accurately noted, Plaintiff returned over two months later, ready to accept treatment and, within a month, was responding with an improvement in mood. Id. (referencing Tr. 452-59). Read in context, I find no gratuitous character assassination and no error in the ALJ's reliance on this record reference.

20

Based on the foregoing, I find no error in the ALJ's compliance with SSR 16-3p's requirement that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. I further find that the ALJ committed no legal error and that substantial evidence supports his analysis of Plaintiff's mental impairments. Therefore, I recommend that his determination be affirmed.

## IV. <u>Conclusion</u>

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 12) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 28, 2022